HOFFMAN v. ADAMS.[1]

1. INJURY TO SERVANT—NEGLIGENCE OF MASTER—UNSAFE HORSE—DEFECTIVE HARNESS—QUESTION FOR JURY.

In an action by a servant against his master for injuries received by the running away of a horse attached to a delivery wagon which he had been engaged to drive, it appeared that plaintiff was but 18 years old, and had recently been ill; that the horse was nervous and high-spirited, and "ready to spring and go" if another rig should come up behind; that defendant had driven the horse for some time prior to the accident; that the harness was without a check-rein; that plaintiff had never before driven the animal, and was given no warning. *Held*, that whether the defendant was negligent in intrusting the horse to the plaintiff, and in furnishing an insufficient harness, was a question for the jury.

2. SAME—CAUSE OF ACCIDENT.

Whether an injury from the kick of a horse while driving it was due to the absence of a check-rein is for the jury to determine.

3. ACTION FOR PERSONAL INJURIES — TRIAL — STATEMENTS OF COUNSEL.

In an action by an employé for personal injuries, a statement by plaintiff's counsel in his opening to the jury that he proposed to prove that defendant did not go near plaintiff after the accident, as bearing on the measure of damages, and a subsequent offer of testimony to that effect, are not reversible error, where the court in both instances promptly

---

[1] Rehearing denied September 26, 1895.

held the proposed testimony to be incompetent, and nothing appears to show that counsel did not act in good faith.

4. TRIAL—CREDIBILITY OF WITNESS—EVIDENCE.

One of the parties to a suit having denied on cross-examination that he had stated to S. that his witness C. had stolen from him, and that he was going to have C. arrested, and hold it over him until the suit was decided, S. was called to contradict him, and, against objection, testified to the charge of theft, but denied the making of any threats. *Held*, that while the testimony of S., standing alone, was immaterial, it would have been competent if connected with the further statements, and that, counsel having acted in good faith, and no motion having been made to strike out the testimony, the case would not be reversed in the absence of a showing of prejudice.

5. SAME—ERROR WITHOUT PREJUDICE.

A party to an action who has himself testified on cross-examination, without objection, that one of his witnesses had stolen certain articles from him when in his employ, is not prejudiced by the admission of testimony to the effect that he had accused such witness of taking other articles of like character.

Error to Wayne; Lillibridge, **J.** Submitted June 7, 1895. Decided July 2, 1895.

Case by Augustus Hoffman, by Victoria Hoffman, his next friend, against Michael A. Adams, for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Brennan, Donnelly & Van De Mark,* for appellant.

*Seth E. Engle,* for appellee.

MONTGOMERY, J. This is an action brought by the plaintiff against the defendant to recover damages for an injury received by reason of a horse which he was driving for the defendant having run away, and become unmanageable, and having kicked the plaintiff, breaking his leg. The declaration alleges that the horse was a vicious, high-spirited, dangerous, biting, and kicking animal, wholly unfit and unsafe to be used by a stranger,

and in a new business to which she was not accustomed, and that the vicious, dangerous, biting, and kicking characteristics of the horse were well known to the defendant, and that he knew that she was wild, spirited, and was liable and inclined to run away at the first opportunity, and that he knew that she was an unsafe animal, for the reasons aforesaid, to be used in the delivering of goods. The declaration also alleged that the harness used upon the horse was too small, and unfit to be used with her; that the terret or ring on one side of the harness had been lost or broken; that the line swung loose, without anything to guide or hold the same, from the bit of the horse to the hand of the driver; that there was no check-rein to the head-stall, nor anything to keep the animal's head up. Plaintiff was at the time of receiving the injuries about 18 years of age, and had just recovered from an illness, and applied to the defendant for a position. Defendant employed him to drive a delivery wagon. The first day and part of the next he used a small pony called "Jimmie." On the afternoon of the second day, defendant ordered the horse in question to be hitched up, and ordered the old harness to be put on the horse. Plaintiff testified that there was no check-rein to the head-stall, and that there was no ring on the saddle for the line to go through, and that the harness was too small for the horse. During that afternoon the plaintiff received his injuries.

Plaintiff called as a witness C. F. Copland, who testified that he worked next door to the plaintiff; that he saw the horse the afternoon that it was hitched up, and had seen her in the use of defendant before that time; that he did not know of her having been used to deliver goods before that time; that the mare was of a very nervous disposition; that he had noticed that, in hitching up, Mr. Adams would do the handling of the mare,—he would be there to see to the hitching up of the mare; that he also noticed on the occasion in question that the

horse had no check. Plaintiff also called as a witness Mr. La Flamboy, who had known the mare before she was bought by the defendant, and who testified that she was owned by witness' partner, and sold by him to Mr. Adams;that she was a high-spirited animal, and a nice driver; that if she was ever driven along, and another rig came up behind, she was ready to spring and go; that sometimes he had seen mud fly from the wheel, and strike her, and she would jump. "You had to attend to your driving." Plaintiff also called a witness who testified that after the accident defendant said that he was sorry he had hired the plaintiff; that he should have known better than to hire him; that he was no good, and had just come out of the hospital, and been there eight or ten weeks. Defendant testified that he did not tell Hoffman that the horse was a high-lived horse; that he did not think that the horse was high-lived; did not tell him any such thing; did not think it was necessary; did not give them any warning; they were hired for that purpose.

It is strenuously insisted that there was no evidence to go to the jury, but we think, with the inferences which the jury were justified in drawing from the evidence, that it became a question for them whether, in view of the plaintiff's age and condition, the defendant was in the exercise of due care in intrusting, and particularly without warning, this horse to his care. It was open to the jury to find that the defendant had knowledge of the characteristics of the horse, as he had driven her for some time before the accident; and we think it was also for the jury to say whether the defendant was in fault in permitting plaintiff to use her with the harness which he furnished, with no means of checking the animal. It is true there was a conflict in the testimony as to defendant's knowledge, but we are not prepared to say that there was no evidence on this point for the jury. The circuit judge submitted the question to the jury, with a fair charge, in which he stated:

"The question for you in this case is not whether the horse ran away and injured this plaintiff, but the question is, did the owner of that horse, the defendant in this case, know, or have reasonable cause to know, that that horse was unsafe to be driven on this delivery wagon by this plaintiff? That is the leading question in this case."

He further said to the jury:

"If you find that the defendant was negligent, that the horse was unsafe, and was known to him to be unsafe, or that by reasonable care he should have known it was unsafe, or, in other words, he had reasonable cause to know it was unsafe, and that the harness was not in a reasonably safe and proper condition to be driven upon the horse, then your verdict should be for the plaintiff."

This latter portion of the charge is criticised on the ground that there is no evidence that the accident was caused by reason of the defective harness. But, as the injury resulted from a kick of the horse, we think the jury might have drawn the inference that, had the horse been checked, it would not have been so likely to occur.

Error is also assigned on the statement made by plaintiff's counsel, in opening the case to the jury, that he expected to prove that defendant did not go near plaintiff after the accident. When objection was made to the statement, the court promptly ruled that the proposed testimony was incompetent, and excluded the testimony when offered. Plaintiff's counsel stated, in connection with the statement, that he offered it as bearing upon the measure of damages, claiming that such testimony might tend to show that he was entitled to exemplary damages. We have no reason to doubt the good faith of counsel in making this proposition, and, under the circumstances, we do not think, in view of the prompt ruling of the court, the offer can be said to have prejudiced the jury.

One Cole had been in the employ of defendant, and was a witness on the trial. When defendant was on the stand, he was asked whether Cole had not stolen from him when in his employ, and whether he had not said to

one Spring that Cole had stolen a chamber set, and that he (defendant) was going to have Cole arrested, and hold it over him until this suit was decided. He denied having made these statements, and Spring was called to contradict him. The witness was asked whether defendant had told him that Cole had stolen chamber sets. This was objected to. Error is assigned upon the admission of the testimony, on the ground that it related to an immaterial issue. Standing by itself, this testimony was immaterial, but, as offered in connection with the purpose to show that the defendant had made the other statements in regard to holding the matter over the witness Cole pending the trial of the case, it would have been competent. The witness Spring, however, testified that defendant did not make the statements implied in the question put to the defendant. We assume that counsel was acting in good faith in opening up this inquiry, and, as there was no motion to strike out the testimony thereafter, we think the case should not be reversed on this ground, unless it is apparent that the error was damaging to defendant's case. It is quite evident that it was not, as its only effect was as it bore upon the credibility of the witness Cole; and the defendant was himself permitted to testify, apparently without objection, that the witness Cole had been guilty of stealing some small items from his store. It could not be very material, as bearing upon his credibility, whether the articles which he stole were lamp chimneys or butter knives.

We think no error was committed on the trial which worked a prejudice to the defendant.

The judgment will be affirmed, with costs.

The other Justices concurred.